UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PABLO SANCHEZ, et al.,<br><br>   Plaintiffs,<br><br>  v.<br><br>HEARST COMMUNICATIONS, INC.,<br><br>   Defendant. | Case No. 20-cv-05147-VC<br><br>**ORDER DENYING MOTION FOR CLASS CERTIFICATION WITHOUT PREJUDICE**<br><br>Re: Dkt. No. 74 |

  Pablo Sanchez and Violet Alvarez sued Hearst Communications, seeking to represent a class of similarly situated workers and claiming that Hearst violated California law by misclassifying them as independent contractors rather than employees. Hearst publishes and distributes newspapers in the San Francisco Bay Area, including (among others) the *San Francisco Chronicle*. Sanchez and Alvarez served as newspaper dealers, having signed agreements to pick up and deliver papers for Hearst. They assert a series of claims under California state law for Hearst's alleged misclassification and ask for damages, penalties, and injunctive relief.

  Sanchez and Alvarez move for class certification. They seek to certify a class of everyone "who personally delivered newspapers for Hearst . . . solely pursuant to a contractor home delivery agreement in the State of California" since July of 2016. The proposed class consists of 57 people. The parties spar primarily over whether common questions predominate and whether class treatment is a superior method of adjudicating the dispute. Because the plaintiffs have not shown on this record that there are not significant differences between class members—or, if there are significant differences, how they could be handled at trial—the motion to certify the

class is denied.

All agree that the question whether Hearst misclassified Sanchez and Alvarez turns on an application of California's *Borello* test, which explains that the "determination of employee or independent-contractor status is one of fact." *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 769 P.2d 399, 403 (Cal. 1989). Whether an employer retains the right to control the manner and means of work is the "most important" factor. *Id.* at 404. But secondary factors play into the equation too. *Ayala v. Antelope Valley Newspapers, Inc.*, 327 P.3d 165, 171 (Cal. 2014) (recognizing a "range of secondary indicia" in addition to "the extent of the hirer's right to control the work"). Most relevant for today's purposes is "whether the one performing services is engaged in a distinct occupation or business." *Borello*, 769 P.2d at 404.

The proposed class includes only those home delivery workers who signed contractor home delivery agreements with Hearst. But the record suggests there may be significant variation in how the proposed class members chose to meet their end of the bargain. Alvarez, for instance, contracted with "more than a dozen" carriers to fulfill her obligations under her agreement with Hearst. Flordeliz Abad used "seven or eight" carriers to deliver papers for him. Daniel Halili declared that since 2016, his "business has contracted with at least 50 carriers to deliver newspapers published by Hearst," while Vincent Archuleta explained that he used just two carriers. Other variations exist too. Some class members operated as independent business entities; others did not. Some putative class members worked close to 100 hours per week; others (perhaps because they hired help) logged far fewer.

These potentially significant variations in subcontracting behavior preclude a finding that common issues predominate. At least on this record, there are doubts as to whether the misclassification issue can be decided on a classwide basis. California courts instructing juries on the *Borello* test have explained that a worker's "use of helpers" is a factor to consider. *See Cristler v. Express Messenger Systems, Inc.*, 171 Cal.App.4th 72, 85 (Cal. Ct. App. 2009). There may be efficient ways to handle the variations that appear to exist between the proposed class members in this case such that certifying the class—or certifying defined subclasses—will prove

appropriate. But the plaintiffs have not identified suitable subclasses, nor have they shown that there are not significant differences between class members—differences that could well be material in determining liability.

True, courts often overstress the existence of subcontracting arrangements in considering motions for class certification. Because hiring helpers is only a secondary factor under *Borello*, because there will often not be significant differences in how class members actually used subcontractors, and because such differences can sometimes be handled through the creation of subclasses, it is often proper to certify a class even where class members can contract out their work to others. *See, e.g.*, *Nash v. Horizon Freight Systems, Inc.*, 2020 WL 7640878, at *2 (N.D. Cal. Dec. 23, 2020). But in this case, on these facts, the variation in subcontracting arrangements looms as a significant liability issue, and the plaintiffs have not adequately explained how that issue could be handled in a class action trial (whether through the creation of subclasses or in some other way).

The plaintiffs argue that just because class members might have hired helpers does not mean Hearst is shielded from liability. They cite *Martel v. Hearst Communications, Inc.* for the proposition that "the ability to subcontract is not dispositive of control." 468 F.Supp.3d 1212, 1216 (N.D. Cal. 2020). True enough—*Borello* itself emphasized that no one factor dictates the outcome. 769 P.2d at 407. But at class certification, the question is whether it is likely that liability can be adjudicated on a classwide basis, or whether individual differences instead preclude common treatment. The Court must look ahead to the trial. If one factor looms large in the context of a particular case, and if it could affect the verdict, and if there is significant variation among class members as to that factor, there are potential problems in terms of predominance and superiority. *Cf. Cotter v. Lyft, Inc.*, 60 F.Supp.3d 1067, 1081 (N.D. Cal. 2015) (denying summary judgment to the plaintiffs because "one could easily imagine a reasonable jury concluding that they were independent contractors, even if other Lyft drivers with heavier or more regular schedules might properly be deemed employees"). At least on this record, there is a serious risk that variations in subcontracting behavior would be important at trial.

The motion for class certification is denied. Denial is without prejudice because there is a reasonable possibility that a class could be certified on a stronger showing, and because the additional factual development needed to reach that decision point would not be unduly burdensome. A further case management conference is scheduled for May 11, 2022, at 1:00 p.m. to discuss how the case will proceed from here.

**IT IS SO ORDERED.**

Dated: May 4, 2022

VINCE CHHABRIA
United States District Judge